14 CV 8108

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
KHADIJAH WATKINS

                   Plaintiff,

   -against-

THE CITY OF NEW YORK, POLICE
OFFICER MICHAEL CALLAHAN,
POLICE OFFICER RODRIGUEZ and
"JOHN DOE AND JANE DOE #1-12"
(the names John and Jane Doe being fictitious
as their true names are presently unknown),

                   Defendants.
-------------------------------------------------------x

**Index No.**

**COMPLAINT**

**JURY DEMAND**

RECEIVED
OCT 08 2014
U.S.D.C. S.D.N.Y.
CASHIERS

     Plaintiff, by her attorney, Law Office of Philip Akakwam, P.C., complaining of the defendants, The City of New York, P.O. Michael Callahan, P.O. Rodriguez and "John Doe and Jane Doe #1-12" (collectively "defendants"), upon information and belief alleges as follows:

## INTRODUCTION

    1. This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

    2. Plaintiff seeks monetary damages for: the false arrest, false imprisonment use of excessive force and malicious prosecution of Plaintiff, Khadijah Watkins, and otherwise, for the violation of her federally guaranteed constitutional and civil rights. Also, plaintiff seeks damages for trespass and for property damage. Plaintiff seeks whatever other relief is appropriate and

necessary in order to serve the interest of justice and assure that her remedy is full and complete.

## JURISDICTION

3. The jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343[3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and under the Fourth and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party Jurisdiction. Plaintiff requests that the Court invoke pendent jurisdiction over any and all claims arising under the laws and Constitution of the State of New York.

5. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff, a black female, is a resident of the City of New York, County and State of New York.

7. Defendant, The City of New York (City) is a municipal entity existing under the laws and Constitution of the State of New York and was the public employer of the defendant police officers through its Police Department - New York City Police Department- and the actions of the police officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

8. Upon information and belief and at all times relevant herein, defendant P.O. Michael Callahan and P.O. Rodriguez were police officers employed by the defendant City of New York.

9. Defendants John Doe and Jane Doe #1-12 were police officers employed by defendant City of New York.

2

10.  Plaintiff is suing the defendant officers in their individual and official capacities.

## NOTICE OF CLAIM

11. Plaintiff, in furtherance of her state causes of action, filed timely notice of claim against the City, in compliance with General Municipal Law Section 50.

12. More than 30 days have elapsed since service of said notice, and the City has failed to pay or adjust the claim.

## FACTS COMMON TO ALL CAUSES OF ACTION

13.   On or about February 9, 2013, at approximately 6:30 p.m., plaintiff was inside her apartment located at 2370 2nd Avenue, #3B, New York, New York when she was assaulted and arrested by defendant officers.

14.  On the date and time aforesaid, while plaintiff was inside her apartment, some police officers knocked on her door. When plaintiff opened her door, the officers came into her apartment.

15.  Inside plaintiff's apartment, defendant officer Rodriguez told plaintiff that they had received a call from her neighbor claiming that plaintiff had a weapon. Plaintiff told the officers that she did not have any weapon.

16.  Plaintiff explained to the officers how her neighbor, Caroline Colon, her boyfriend, Walter Jeffries, and Ms. Colon's daughters have been harassing plaintiff and how they had attacked her in September 2012. She informed the officers that she had an order of protection against Ms. Colon and her daughters. In addition, plaintiff advised the officers that the Ms. Colon had made false report against her a few days prior to this incident alleging that she had damaged her door, when she had in fact reported the same door damaged by her daughter.

3

17.  Prior to this incident, plaintiff had called the police more than five times in the past to complain about harassment by Ms. Colon, her daughters and Mr. Jeffries. Said harassment includes kicking at plaintiff's door and throwing thrash in front of her apartment. As a result of these harassment, plaintiff took out an order of protection against Ms. Colon and her daughters.

18. As plaintiff was speaking with the officers who were in her apartment, two other officers came in from outside the apartment and placed plaintiff under arrest.

19. The officers handcuffed plaintiff to her back and started leading her outside. Plaintiff asked to be allowed to put on some pants and sneakers as it was very cold and snowy outside but the officers refused.

20. Instead, the officers violently grabbed and dragged plaintiff causing her to suffer several bruises and lacerations to her hand and elbow.

21. While some of the officers were dragging plaintiff away from her apartment, other officers searched various parts of plaintiff's apartment.

22. As the officers were leading plaintiff to the elevator, plaintiff turned her head to advise her sister to bring her proper clothes to the precinct. Then one of the officers yelled at plaintiff to move along and as plaintiff continued to move the officer struck plaintiff on her right hand with his night stick causing a fracture of the metacarpal bones.

23. Inside the elevator, while plaintiff was speaking to defendant officer Rodriguez, the officer that had struck plaintiff with a night stick told plaintiff to shut up and he violently pushed plaintiff's face against the walls of the elevator.

24. Then plaintiff was placed in a police vehicle by the defendant officers who thereafter transported her to the 25th Police Precinct where she was searched, fingerprinted, photographed

and detained in a holding cell.

25. Before she arrived at the precinct, plaintiff was already in severe pain from the assault by defendant officers. Plaintiff complained about her pain and asked for medical attention.

26. After detaining plaintiff for hours at the precinct, she was transported to the Metropolitan hospital for treatment. Throughout her stay and treatment at the hospital, plaintiff was handcuffed to her bed and guarded as a prisoner.

27. After receiving treatment at the hospital, plaintiff was taken to a second location different from the 25th police precinct and detained for many more hours before being arraigned in court.

28. Plaintiff was charged with menacing, obstructing governmental administration, criminal possession of a weapon, harassment and resisting arrest.

29. Upon arraignment, plaintiff was released on her own recognizance. Plaintiff was released around 11 p.m. on February 10, 2013.

30. After her release, plaintiff was advised by some of the defendant officers not to return to her apartment but to go somewhere else until things have calmed down with her neighbors.

31. Plaintiff went to stay with her cousin Pamela Ward, in Coney Island, Brooklyn hoping to return to her apartment after a few days.

32. On February 14, 2013, plaintiff got a call from one of her neighbors, Barbara Williams, who advised plaintiff that the police were in her apartment tearing it down and tossing up everything. Later, about two other neighbors, Michael Vasquez and Janet, also called plaintiff and told her that the police were inside her apartment.

33. Upon receiving this information as aforesaid, plaintiff immediately called the 25th

5

precinct and PSA5 and asked why police officers were in her apartment. Both the 25th precinct

and PSA5 claimed they had no idea what was going on.

34. The police locked plaintiff out of her apartment by locking the entrance door with a

padlock. Plaintiff called the 25th precinct and PSA5 to ask why they had locked her out of her

apartment. They denied knowledge about the padlock on plaintiff's door. Plaintiff's sister and

brother both called the police about the same issue but the police denied knowing about the

padlock on plaintiff's door.

35. Plaintiff's neighbors, Michael Vasquez and Barbara Williams, had informed her that

the police raided her apartment and were in and out of the apartment several times on both

February 14 and 15, 2013.

36. Plaintiff continued to be locked out of her apartment until February 27, 2013 when the

police finally admitted having the keys to the padlock and asked plaintiff to come to the precinct

to pick same up. The police however, claimed they did not know how the key came into their

possession.

37. On the morning of February 27, 2013, plaintiff had called the precinct and spoke with

one Sergeant Doug who claimed that the police did not have any knowledge about the padlock on

her door. It was later same day, when plaintiff called and spoke with one officer Ruiz that the

latter admitted that they had the keys to the padlock locking plaintiff's door but he said they did

not know how the keys came into their possession.

38. When plaintiff finally got access to her apartment after obtaining the keys to the

padlock from the police on February 27, 2013, plaintiff discovered that her whole apartment was

tossed up and a lot of her property damaged including her computer, furniture and electronics.

Also, plaintiff's mattress was damaged by water which had come from the windows left open by the officers. In addition, all the food in plaintiff's apartment were damaged as some were tossed out of the refrigerator by the officers.

39. Following her arraignment, plaintiff was required to return to court on numerous occasions to defend the false charges levied against her.

40. On or about July 10, 2014, all the charges levied against plaintiff were dismissed.

41. That each and every officer who responded to and/or was present at the location of plaintiff's arrest and/or at the precinct or facility knew and was fully aware that plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

42. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

43. Plaintiff suffered physical injuries, including a fracture of the metacarpal bones of her right hand. Plaintiff also suffered bruises and lacerations on her arms and body. Moreover, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, loss of liberty, psychological trauma, pain, financial loss and damage to reputation as a consequence of the defendants' unlawful conduct alleged herein.

44. The Plaintiff suffered violations of his federally guaranteed constitutional and civil rights including rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

45. The Defendant Officers acted together and in concert sanctioning and ratifying and otherwise condoning the wrongful actions being taken by each of the defendant Officers in a

7

collective manner and fashion.

46. The Plaintiff has no other adequate remedy at law but for this action.

## AND AS FOR A FIRST CAUSE OF ACTION:
## 42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT

47. Plaintiff reiterates paragraphs 1 through 46 and incorporates such by reference herein.

48. By their conduct and under color of law, defendant officers deprived plaintiff of her constitutional right to be free from false arrest and false imprisonment.

49. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## AND AS FOR A SECOND CAUSE OF ACTION:
## 42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE

50. Plaintiff reiterates paragraphs 1 through 49 and incorporates such by reference herein.

51. By their conduct and under color of law, defendant officers deprived plaintiff of her constitutional right to be free from excessive and unreasonable force.

52. As a direct and proximate result of the misconduct detailed above, plaintiff sustained the damage herein before stated.

## AND AS FOR A THIRD CAUSE OF ACTION:
## 42 U.S.C. § 1983 - FAILURE TO INTERCEDE

53. Plaintiff reiterates paragraphs 1 through 52 and incorporates such by reference herein.

54. The defendant officers and other John Doe police officers each had opportunities to intercede on behalf of plaintiff to prevent the excessive use of force and unreasonable seizure but due to their intentional conduct or deliberate indifference declined or refused to do so.

55. As a direct and proximate result of the misconduct detailed above, Plaintiff sustained the

### AND AS FOR A FOURTH CAUSE OF ACTION:
### 42 U.S.C. § 1983 - CONSPIRACY

56. Plaintiff reiterates paragraphs 1 through 55 and incorporates such by reference herein.

57. Defendant officers and other John Doe police officers acting under color of law, conspired with one another to deprive plaintiff of her constitutional rights, including the rights: to be free from intentional use of unreasonable force; to be free from unlawful searches and seizures; to associate and speak freely; to have access to and seek redress in the courts; and to be free from false arrest and false imprisonment.

58. It was part of the conspiracy that the defendant officers physically assaulted plaintiff while her hands were cuffed behind her back and while she was in police custody at the precinct.

59. In furtherance of the conspiracy and in order to cover up the acts of brutality, defendants fabricated and contrived false criminal charges against plaintiff.

60. Defendant officers submitted false police reports and statements to support and corroborate the fabricated charges lodged against plaintiff.

61. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damage herein before stated.

### AND AS FOR A FIFTH CAUSE OF ACTION

**(Monell/42 U.S.C. Section 1983: Claim Against Defendant City of New York)**

62. Plaintiff reiterates paragraphs 1 through 61 and incorporates such by reference herein.

63. The foregoing violations of plaintiff's federal constitutional rights and resultant

9

injuries were directly and proximately caused by conduct, chargeable to defendant City,

amounting to deliberate indifference to the constitutional rights of persons, including plaintiff,

who are investigated, arrested, or prosecuted for alleged criminal activities.

64. The defendant City, through its police department, the NYPD, has developed and

maintained policies and customs exhibiting deliberate indifference to the constitutional rights of

its citizens, which caused the violations of plaintiff's rights.

65. It was the policy and/or custom of the City to undertake inadequate and improper

investigations of civilian complaints of police misconduct and to punish inadequately officers

involved in complaints which were substantiated.

66. Both Internal Affairs Bureau (IAB) and the Civilian Complaints Review Board

(CCRB) have substantially failed in their responsibilities to investigate misconduct and to

discipline transgressors. The IAB investigations of brutality rarely lead to any administrative

trials and, in the rare instances that charges are sustained administratively, the punishment is

minimal and lacking any deterrent effect.

66. Acts of brutality have been tolerated by the defendant City which has been on notice

for a long time that brutality is widespread and that particular reforms need to be implemented.

67. Defendant City, acting through the NYPD, had actual and/or de facto policies,

practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching,

seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are

members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they

were involved in some illicit activities.

68. And defendant City, acting through the NYPD, had actual and/or de facto policies,

practices, customs and/or usages of arresting the victims of aggression instead of the aggressors whenever the aggressors were the first to call the police.

69. The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs were implemented or tolerated by policymaking officials for defendant City including but not limited to, the New York City Police Commissioner, who knew or should have known that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases.

70. Defendant City failed to provide proper training and/or failed to insure that the training provided was adequately understood in regard to the following tasks which police officers commonly perform:

(a)     The determination of probable cause to make an arrest;

(b)     The duty to take into account the totality of the circumstances in determining the existence of probable cause to make an arrest;

(c)     The very limited circumstances under which a warrantless search may be carried out.

71. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when there is probable cause for such

11

arrest.

72. The policymaking officials at NYPD know or ought to have known that such issues that regularly arise in the investigation and prosecution of criminal cases either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations and making the wrong choice.

73. The aforementioned policymaking officials knew that the wrong choice by police officers concerning determination of probable cause will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

74. As a result of inadequate training of police officers on the practical meaning of probable cause for arrest, officers frequently detain and/or arrest citizens based on their hunches, inklings, or mere suspicion and without reasonable or probable cause.

75. As part of its policies, customs and practices, Defendant City has failed to take proper corrective and punitive actions against overreaching police officers thus creating the impression that crime reduction is paramount and triumphs over constitutional rights in all circumstances.

76. As a direct and proximate result of the City's policies and deliberate indifference, defendants violated plaintiff's constitutional rights causing plaintiff to suffer substantial damages.

<u>**AND AS FOR A SIXTH CAUSE OF ACTION**</u>
**(Negligent Hiring, Training and Supervision Under State Law; Defendant City)**

77. Plaintiff reiterates paragraphs 1 through 76 and incorporates such by reference herein.

78. By virtue of the foregoing, defendant City of New York is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the NYPD with regard to their aforementioned duties.

79. As a direct and proximate result of the acts and omissions of the defendants described in this Complaint, plaintiff suffered a significant loss of his liberty and violation of his federal constitutional rights, was prevented from attending to his necessary affairs and suffered and continues to suffer significant emotional pain, distress, humiliation and embarrassment.

### AND AS FOR A SEVENTH CAUSE OF ACTION: MALICIOUS PROSECUTION

80. Plaintiff reiterates paragraphs 1 through 79 and incorporates such by reference herein.

81. Plaintiff was subjected to malicious prosecution and malicious abuse of the criminal process in violation of his right under the Fifth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

82. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damage herein before stated.

### AND AS FOR AN EIGHT CAUSE OF ACTION:
### PENDENT CLAIM OF ASSAULT AND BATTERY

83. Plaintiff reiterates paragraphs 1 through 82 and incorporates such by reference herein.

84. By their conduct, as set forth above, defendant officers committed acts of battery against plaintiff which included beating, punching and kicking him about the face and body without cause at the 81st precinct. The use of physical force against plaintiff was willful, unwarranted, and excessive.

85. The defendant City is responsible for the excessive and unnecessary force used by the defendant officers as set forth above because the misconduct occurred while they were acting in the scope of their employment, specifically in the course of arresting plaintiff, and while they were executing their responsibility to hold him safely in police custody at the 81st precinct.

86. Upon information and belief, defendant City had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City failed to take any appropriate actions to assure plaintiff's safety and security and failed to protect and/or safeguard plaintiff's interests.

87. By reason of and as a consequence of the assault detailed above, plaintiff suffered severe and serious physical and mental injuries.

## AND AS FOR A NINTH CAUSE OF ACTION:
## PENDENT CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT

88. Plaintiff reiterates paragraphs 1 through 87 and incorporates such by reference herein.

89. Plaintiff was wrongfully, unlawfully and unjustifiably charged, arrested, detained and deprived of his liberty against his will, and was imprisoned by defendant officers and other unknown John Doe police officers.

90. At all relevant times, the defendant officers acted forcibly in apprehending plaintiff.

91. The wrongful, unjustifiable, and unlawful arrest, detention and imprisonment of plaintiff was carried out without a warrant.

92. The false and unlawful arrest and imprisonment of plaintiff was without any justification or probable cause, and was forcible and against his will.

93. All of the foregoing occurred without any fault or provocation on the part of plaintiff.

14

94. At all relevant times, the defendant officers and other John Doe police officers who were responsible for the false arrest and imprisonment of plaintiff were employees of the defendant City through the NYPD, and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

95. As a direct and proximate result of the false arrest and imprisonment of plaintiff as detailed above, plaintiff sustained the damage herein before stated.

## AND AS FOR A TENTH CAUSE OF ACTION
## PENDENT CLAIM OF GROSS NEGLIGENCE

96. Plaintiff reiterates paragraphs 1 through 95 and incorporates such by reference herein.

97. The conduct of the defendant officers in falsely arresting, detaining and battering plaintiff was grossly negligent and intended to cause plaintiff to suffer severe injury and extreme mental and emotional distress.

98. At all relevant times, said defendant officers were employees of the defendant City through the NYPD, and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

99. As a direct and proximate result of the false arrest and imprisonment of plaintiff as detailed above, plaintiff sustained the damage herein before stated.

## AND AS FOR AN ELEVENTH CAUSE OF ACTION
## PENDENT CLAIM - RESPONDENT SUPERIOR

100. Plaintiff reiterates paragraphs 1 through 99 and incorporates such by reference herein.

101. At all relevant times, all defendant employees of the City of New York were acting for, upon, and in furtherance of the business of their employer and within the scope of their

employment.

102. Consequently, the City is liable under the doctrine of *respondeat superior* for their

tortious actions.

### AND AS FOR A TWELFTH CAUSE OF ACTION:
### PENDENT CLAIM FOR TRESPASS

103. Plaintiffs reiterate paragraphs 1 through 102 and incorporate such by reference

herein.

104. Defendants entered into plaintiffs' home without their consent, without justification

and without search warrant.

105. As a proximate result of defendants' trespass, plaintiffs have been damaged.

### AND AS FOR A THIRTEENTH CAUSE OF ACTION:
### PENDENT CLAIM FOR PROPERTY DAMAGE

106. Plaintiffs reiterate paragraphs 1 through 105 and incorporate such by reference

herein.

107. As a proximate result of the acts of defendants described above, Plaintiff suffered

damage to her property.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

i.      For compensatory damages in an amount to be determined at trial - against all

        defendants, jointly and severally;

ii.     For punitive damages against the individual defendants in an amount to be

        determined at trial;

iii.    For reasonable attorneys' fees, together with costs and disbursements of this

        action, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

iv.     For pre-judgment interest as allowed by law; and

v.      For such other and further relief as the court deems just and proper.

Dated: Brooklyn, New York
       October 6, 2014

                                LAW OFFICE OF PHILIP AKAKWAM, P.C.

                                By:    _____
                                       Philip Akakwam, Esq.
                                       Attorneys for the Plaintiff
                                       303 Livingston Street, 2nd Floor
                                       Brooklyn, N.Y. 11217
                                       (718) 858-2488

Index No.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KHADIJAH WATKINS

Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE
OFFICER MICHAEL CALLAHAN,
POLICE OFFICER RODRIGUEZ and
"JOHN DOE AND JANE DOE #1-12"
(the names John and Jane Doe being fictitious
as their true names are presently unknown),

Defendants.

# COMPLAINT

LAW OFFICES OF PHILIP AKAKWAM, P.C.
Attorneys for Plaintiff
Office and Post Office Address
303 Livingston Street, 2nd Floor
Brooklyn, N.Y. 11217
(718) 858-2488

TO:

Service of a copy of the within is hereby admitted.

Dated: